## WILSON et al. v. J. J. NEWMAN LUMBER CO.

[91 South. 858.   No. 22606.]

1. COMPROMISE AND SETTLEMENT. *Where a master had settled with an attorney claiming to represent the deceased's. relatives in an administrator's suit, defendant need not offer to rescind the settlement, in order to recover from attorney.*

   A bill, which alleges that, shortly after one of its employees was killed, complainant received a letter from an attorney alleging in substance that he represented the father of the deceased, and. his folks in presenting the claim for the death of deceased, and thereafter a settlement was made· with this attorney, one day after suit had been brought by the administrator; and special pleas were filed in the administrator's suit setting up in full the settlement and calling attention of the court to the fact that the attorney claimed to have an assignment of the cause of action, this was all that was necessary for the defendant to do in that suit.    In his pleadings he relied upon the settlement made through the attorney.    It was not necessary for defendant before the trial of the cause in the circuit court to offer to rescind the settlement with the attorney; neither was it neces-· sary for it to notify the attorney of the pendency of this suit.

2. COMPROMISE AND SETTLEMENT. *Master, having paid attorney in settlement for servant's death, may, after judgment by servant's administrator, maintain a bill in equity against the attorney.*

   Where its special plea of release and also of accord and satisfaction· were held for naught in the trial in the circuit court and a judgment rendered against it for damages for the death of deceased, it has a right to maintain a bill in equity against the attorney through whom the settlement was consummated for an accounting and for the return of money paid him under a mistake of fact, viz., the mistaken idea that the settlement made · with him was a valid and binding settlement for the death of the deceased.    A demurrer to such bill by the defendant's attorney was properly overruled.

APPEAL from Chancery court of Perry county.

HON. D. M. RUSSELL, Chancellor.

Bill by the J. J. Newman Lumber Company against T. Weber Wilson and others, in which a decree of *pro con-*

*fesso* was taken against the defendant Nathaniel Hinton and defendant Wilson's demurrer to the bill was overruled, and an appeal granted. Affirmed and remanded.

*J. W. Cassedy* and *N. Y. Currie,* for appellant.

This fact distinguishes this case from all those cited. This fact made it incumbent, absolutely, upon the appellee, as a plain matter of equity, when it discovered the mistake, and the record shows that it discovered the same before the trial of the case in the circuit court, to restore to the appellant his property—his interest in the cause of action, indeed his cause of action—by returning the release and receiving back the money—thereby putting itself and him *in status quo* before the trial of the case in the circuit court, and nothing could in equity absolve it from doing this, or at least offering to do it. It did neither. It held in its hand on the day of the trial of the case in the circuit court, the release which it obtained for the money which it now seeks to recover, depriving the appellant of his right of action and his property, excluding of his right to appear in the case, and still holding on to the same, seeks a recovery from him, in equity, of the money.

It cannot ratify in part and reject in part. It was bound to ratify in whole or reject in whole. It is too late now for it to offer to do equity. The trial of the case in the circuit court where the appellant could have reasserted his rights is over.

Before the trial of the case in the circuit court was the time for the appellee to do equity or to offer to do it. Then was the time when the appellant could have been restored to his right of action with all of its incidents, important among which was the right to appear in the trial of the case in the circuit court with his interests unhampered and not destroyed by the release and prosecute the same without delay—manifestly a valuable right—and of it he was necessarily deprived by the release.

A sufficient reply, it seems to us, to the cases of *Foster* v. *Hicks,* 93 Miss. —, 6 So. 533; *Kelly* v. *Howard,* 98 Miss. 54 So. 10, cited by counsel for the appellee is, that before the settlement and the execution of the release, the appellant could have, under our statutes, maintained an action against the appellee on his assignment of an interest in the cause of action.    That right he settled, relinquished and released.

But there is nothing in either one of these cases which can have any controlling effect in the determination of the questions raised by this record.    The case of *Appleton Bank* v. *McGilvray,* 64 Am. Dec. 92, cited by counsel for for the appellee is an authority in support of the contention of the appellant and not the appellee.

Wilson, the appellant, sustained damage by the settlement and the execution of the release.    He was deprived of his own property and property rights.    In such case the whole law is that he must have been put back in his original standing and in the possession and legal enjoyment of his property by the appellee, before the appellee can assert any equitable right against him.    The bill shows that the appellee did not do this and did not attempt or offer to do it.    It contains no allegation of fact showing or attempting to show why it did not do it.    No excuse is offered or attempted—no explanation.

The case of *Kingston Bank* v. *Eltinge,* 100 Am. Dec. 516, cited by counsel for the appellee, when considered is also in principle found to be in support of and not against the contention of the appellant.    Right on the crucial and turning point in the decision the court said: "Neither is such judgment impaired or affected by such sale," showing that no loss or injury or damage had been sustained by the mistake.

The appellant was injured and damaged.    Deprived of his property.    The case of *Merchant's National Bank* v. *National Eagle Bank,* 100 Am. Dec. 120, cited by counsel for the appellee is an authority directly in support of the contention of the appellant.    In the opinion the court held:

"This right to recover back the money, however, will in no case be permitted to prejudice the payee who has suffered any damage or changed his situation in respect to his debtors by reason of the laches of the plaintiff, or his failure to return the check within a reasonable time.

The appellant suffered damage. He parted with his property. He was denied the right of trial in court. He changed his position with reference to the appellee. The day before the release he had a valid cause of action against it. The day after the release he had none.

The case of *Gould* v. *Emerson*, 39 Am. St. Rep. 501, cited by counsel for the appellee is not at all in point, presents none of the aspects of the case now before the court, and may be dismissed with the further comment that it was a case in which one partner gave his note through mistake for the entire ascertained indebtedness of both partners to the firm, when it should have been for only one half of it.

The case of *Wolf* v. *Beaird*, 5 Am. St. Rep. 565, cited by counsel for the appellee is not in point, is not a consideration of a case at all similar in facts to the one at bar and the person who received the money through mistake and whose estate was required to pay it back, parted with no property or legal rights at the time of or because of the payment thereof. His claim had been probated and he was left with exactly the same rights he had always had both in law and fact.

In the case at bar a property right is surrendered. A right of action is surrendered. We have not before us the case cited in 12 L. R. A. 285, but we do not believe it can be a case supporting the contention of the appellee when applied to the facts in the case at bar. To say that when two persons exchange properties and part with legal rights growing out of and attached thereto, through mistake, that one of the parties can hold on to, use and enjoy that which he obtained and at the same time deprive the other of that which he received, or in any manner control or direct its use or application, without rescinding or offering to re-

scind the whole mistake and placing each other *in status quo*, would be so contrary to the impulses of right as to overthrow human confidence in and respect for the principle of law we call equity.

*Tally & Mayson*, for appellee.

The father had perfect right to contract with Mr. Wilson, not only to represent him but the other members of his family. It was not necessary, even if an action had been instituted, to name the mother and the minor children and co-plaintiffs, but whatever recovery was had by suit or otherwise must have been divided with them in proportion to the share of each; *Foster* v. *Hicks*, 93 Miss. 219, 46 So. 533; *Kelly* v. *Howard*, 98 Miss. 548, 54 So. 10.

Whatever monies then that either Mr. Wilson or Nathaniel Hinton received they received it as trustees for the use and benefit of the parties in interest. The money did not belong to them and if, as is the fact, the appellee had to pay this money again to the parties in interest, then it has a right to recover of Mr. Wilson and Hinton as trustees for money paid them to discharge a debt which they failed to do. This money was paid to them under the belief and understanding that it was paying all damages to which any person was entitled and, if as a matter of fact, Mr. Wilson was mistaken in the declaration that he represented Nathaniel Hinton and his folks, whereas in truth he only represented Nathaniel Hinton, the money then was paid to him under a mistake of fact and since it didn't perform the office and discharge the debt that it was designed to do they hold the shares of the parties not settled with a trustee. Upon the discovery of the amount it has a right to a decree against them for the amount. Money paid under a mistake of fact can always be recovered of the party to whom it is paid: *Appleton Bank* v. *McGilvray*, 64 Am. Dec. 92; *Kingston Bank* v. *Ettinge*, 100 Am. Dec. 516 & note, 40 N. Y. 391; *Merchants National*

*Bank* v. *National Eagle Bank,* 100 Am. Dec. 120, 101 Mass. 281; *Gould* v. *Emerson,* 39 Am. St. Rep. 501, 160 Mass. 428.

Even though the appellee was negligent in paying the money to Mr. Wilson under mistake of fact, it is no defense unless damages was sustained by him as result of the payment: *Appleton Bank* v. *McGilvray,* 64 Dec. 92; *Mansfield* v. *Lynch,* 12 L. R. A. 285; *Merchants National Bank* v. *National Eagle Bank,* 100 Am. Dec. 120, 101 Mass. 281.

The law created an implied contract on the part of Mr. Wilson and Nathaniel Hinton to pay back all monies received for the others. *Wolf* v. *Beaird,* 5 Am. St. Rep. 565, 123 Ill. 585.

Counsel in his elaborate brief, page 9, quotes that time honored maxim of equity that: "He who seeks equity must do equity." This is followed by an interrogation as to what equity requires of the appellee in this case. The inference is very strongly suggested that if the appellee had tendered or returned or offered to return to appellant and his co-defendant the release executed by Mr. Wilson, that they would have received it back and paid to appellee all money received save Nathaniel Hinton's part and Mr. Wilson's fee. In fact he says: "The presumption is conclusive on the record, that the appellant and his co-defendant, Nathaniel Hinton would have received a release and returned the money. This would have been equity. Any time the parties want to return this money or pay appellee the damage under which it has been subject by reason of their acts, they can get release. From its failure to protect the appellee, however, against this second suit and resulting verdict it had had about the same efficacy as treaties did in pre war times with the Germans— a mere scrap of paper, nothing else—."

Learned counsel for appellant also makes many further quotations from Mr. Pomeroy's valuable treatise on Equity Jurisprudence. However, we fail to see that those valuable principles and maxims are at all applicable to the instant

case.  We observe the following on page 13 of appellant's brief: "We take it that there could be no doubt but that the intention of the appellee was to get rid of the law suit pending against it in the circuit court of Perry county, at the time it made the settlement, and there is certainly no allegation or fact in the record anywhere from which it can be said that the appellant or his co-defendant, Nathaniel Hinton, had any notice or knowledge of the pendency of that suit before and at the time the settlement was made, and if any fraud or turpitude characterized the settlement as made, and if any fraud or turpitude characterized the settlement in view of the pendency of said suit, it attached solely to the appellee."  It will be borne in mind that Mr. Wilson's notice to the appellee that he represented the Hinton family antedated the filing of this suit for about two months.  And since, under the statute there could be but one suit and in view of the fact that two of the parties in interest were minors, the appellee could well indulge the presumption that Mr. Wilson and Nathaniel Hinton caused letters of administration to be granted on the estate of the deceased and that the suit was at their instigation.  Appellee had a right to settle with the attorney of record. *Dearmond* v. *Fine*, 111 Miss. 737, 72 So. 145.

But it is immaterial when suit by the administrator was brought.  His suit was the repudiation of Mr. Wilson's contract, unless of course the suit was at his and Nathaniel Hinton's instigation.  They therefore held all monies paid to them in settlement of the damages, as trustees for the benefit of the parties in interest or of the administrator for the payment of these damages and if the money was not used for that purpose or used for some other purpose, then of course the appellee has a right to recover it back.

We respectfully submit that there is no merit in the appellant's appeal, that the demurrer was properly overruled by the court below and that the case should be affirmed and remanded and an answer required of the appellant.

SYKES, P. J., delivered the opinion of the court.

The appellee alleges in its bill: That R. C. Hinton, deceased, a son of the defendant Nathaniel Hinton, was killed while in the employ of the complainant company. That shortly after his death the defendant T. Weber Wilson, an attorney at law, informed complainant by letter that he had been employed by the father of the deceased and his folks to represent them in a suit for the killing of the son, that he had an assignment from these people and wished to know if it desired to take the matter up before the institution of a suit. That at the time of the death of R. C. Hinton, who was a minor, he left surviving him his father, mother, and a brother and sister who were minors. That after receiving this notice from Mr. Wilson, it was agreed between them to compromise this matter for the sum of three thousand five hundred dollars, in pursuance of which a draft for this amount was delivered to Mr. Wilson as attorney and a release was signed by him in full settlement of all damages for the death of this boy. That the defendant Watkins took out letters of administration and sued for and recovered a judgment against the complainant for fifteen hundred dollars for the death of this boy. The complainant therefore alleges that he has twice paid damages for the death of this boy, once to Wilson as attorney and the other time as required by a judgment of the circuit court. The bill prays that the defendant Watkins discover under oath how much money he now holds by virtue of his office of administrator as a result of this judgment that should be paid to the defendant Nathaniel Hinton; and that Wilson and Nathaniel Hinton discover on oath how much money they have received out of the three thousand five hundred dollars paid Wilson and not disbursed to other members of the family than Nathaniel Hinton; and that on final hearing the court decree that they hold this money in trust and be required to pay the same to the complainant and

that it recover of them a sum sufficient to make it whole from all damages, etc.   The exhibits to this bill are:   A letter from Wilson as attorney which states in effect that he represents Nathaniel Hinton and his folks in their claim against the complainant. That he had an assignment from them.   The draft in payment of the three thousand five hundred dollars to Wilson and the release signed by Wilson as attorney for Nathaniel Hinton are also exhibits.   The other exhibits are the summons, pleadings, and judgment of the circuit court in the suit of the administrator Watkins against the complainant company. These exhibits show that the complainant lumber company was served with a summons in the suit of the administrator the day before it perfected its settlement with Wilson.

In the suit in the circuit court, the defendant lumber company pleaded the general issue and also filed a special plea of accord and satisfaction.   It set out in detail its agreement of settlement and settlement with Nathaniel Hinton for himself and family.   It also filed a plea of release setting out in full the settlement consummated with the attorney Wilson and making a copy of the release an exhibit to this plea.   It also filed another special plea, in which it alleged the settlement with Nathaniel Hinton and his attorney, Wilson, and further alleged that Wilson held an interest by assignment in the cause of action and was not made a party plaintiff to the suit.   Demurrers were sustained to the first two special pleas.   The record fails to show any action of the court upon the third special plea.   A judgment based upon the verdict of the jury for one thousand five hundred dollars then appears, from which judgment no appeal was prosecuted to this court.

The defendant Watkins answered the bill.   A decree pro confesso was taken against Nathaniel Hinton.   The defendant Wilson demurred to the bill, his ground of demurrer being that there was no equity in the bill.   This demurrer was overruled, and an appeal granted to this court to settle the principles of the cause.

The appellant relies upon two equitable maxims: First, "He who seeks equity must do equity." Second, "He who comes into equity must come with clean hands."

The argument, in brief, is that the lumber company should have notified Wilson and Nathaniel Hinton of the pendency of the suit, and that it should have offered to restore the *status quo* before the trial of the case by returning the release and demanding back its money. That Wilson had a property interest in this claim by virtue of an assignment to him from Nathaniel Hinton. From this record we are not informed whether Wilson holds an assignment to this claim from Nathaniel Hinton or any one. We note in his letter to the lumber company that he so states. We also note in the third special plea to the suit in the circuit court that such an assignment was pleaded. The bill does not affirmatively allege such fact, and from this record we cannot say that Wilson has such assignment.

Neither do we think that the complainant is precluded by either of these equitable maxims from maintaining this bill. The beginning of the negotiations with Mr. Wilson which lead up to the settlement with him, as shown by this record, is his letter in which he states that he represents Nathaniel Hinton and his folks and has an assignment from them to this claim. The lumber company, under this letter, therefore, had a perfect right to negotiate with Wilson in making this settlement, and had a right to rely upon the statements in that letter in making a settlement with him. In the suit of the administrator the defendant company relied upon this settlement and release as a defense. It set it up in every possible way that it could in its special pleas. It evidently had no intention of trying to repudiate this settlement, but, on the contrary, it did what it could to maintain and sustain it. The attention of the court was especially directed to it in three special, pleas. It owed nothing further to the defendants Nathaniel Hinton and T. Weber Wilson than to plead this settlement and release. These pleas were held for naught by the court. Neither did it owe the defendants in this case any

duty to appeal from the judgment of the circuit court to
this court, but had a right to rely upon that judgment and
pay the same to the administrator.  From the bill and ex-
hibits it is plain that this settlement was made under a
mistake of fact, namely, upon the mistaken idea that Wil-
son as an attorney was authorized to settle this claim in
full for three thousand five hundred dollars.

The circuit court has adjudicated that this was not a
valid settlement.  The lower court was correct in over-
ruling the demurrer.  Affirmed and remanded, with leave
to defendant Wilson to answer the bill of complaint with-
in thirty days after the mandate of this court has been
filed in the office of the chancery clerk.

*Affirmed and remanded.*